# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3648
_____

United States of America,

*Plaintiff - Appellee*,

v.

Mario Dominick Clark, also known as Mario Clark,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: October 21, 2024
Filed: April 24, 2025
_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

COLLOTON, Chief Judge.

Mario Clark pleaded guilty to several drug-trafficking offenses, including a conspiracy to distribute cocaine between October 2019 and February 2023. *See* 21

U.S.C. §§ 841(a)(1), (b)(1)(C), 846.  At sentencing, the district court[*] determined an advisory guideline range of 108 to 135 months' imprisonment and varied downward to a sentence of 86 months.  On appeal, Clark argues that the district court improperly relied on disputed facts in the presentence report to determine drug quantity and erred in finding that he maintained a premises for the purpose of distributing cocaine.  We affirm.

The district court found that Clark was responsible for 5,017.8 grams of cocaine, which placed him at a base offense level of 30.  *See* USSG § 2D1.1(c)(5). The court concluded that "this amount obviously pretty dramatically understates the amount Defendant was really selling, but that is the bare minimum . . . that can be assessed based on the uncontested portions of the presentence report."   Clark contends that the record does not support two aspects of the district court's finding on drug quantity.

The first dispute concerns the district court's finding that Clark made at least eleven trips to Chicago to obtain at least two ounces of cocaine on each trip.  The court cited undisputed paragraph 17 of the presentence report: "Further investigation revealed that Clark traveled to the Chicago, Illinois, area to purchase cocaine and distributed it in the Quad Cities area including Davenport, Iowa.  Clark distributed multi-ounce quantities (or more)."  The court also cited paragraph 29(a) of the report, which recounted that Clark made eleven trips to Chicago between December 1, 2022, and January 31, 2023.  Based on eleven trips and multi-ounce quantities per trip, the court attributed 22 ounces, or 623.7 grams, of cocaine.  The district court was "sure that it is far more than that because it wouldn't make sense from a drug trafficking standpoint to risk so much for two ounces," but the court settled on two ounces per trip as a conservative estimate.

---

[*]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Clark complains that the amount was attributed erroneously because he did not admit that he trafficked at least two ounces of cocaine on each trip to Chicago. A district court may accept facts in a presentence report as true unless the defendant objects to them. *United States v. Wintermute*, 443 F.3d 993, 1005 (8th Cir. 2006). Clark cites his objection to paragraph 29(a) in which he admitted taking the eleven trips but denied "that each occasion of travel was solely for the purchase of cocaine," because "[t]he many trips to Chicago were to visit his Aunts, Uncles, and Cousins who live there, particularly around the holidays." An objection that each trip was not "solely" for the purchase of cocaine, however, does not dispute that each trip was for the purchase of cocaine. Clark has shifted his objection on appeal, but given the narrower objection raised to the presentence report, the district court did not clearly err in attributing drug quantities for each trip to Chicago.

The second point regarding drug quantity concerns the district court's finding that Clark was responsible for four kilograms of cocaine that he received from a supplier. The district court relied on paragraph 30 of the presentence report, which recounted Clark's disclosure to a confidential witness:

> In early February 2023, CW1 provided additional information regarding Clark, including that Clark typically obtained two kilograms of cocaine at a time. *CW1 said Clark disclosed he had recently been fronted two kilograms of cocaine with a debt of $46,000, or $23,000 per kilogram.* Clark was able to immediately sell one kilogram for $30,000 to one customer. A second customer paid Clark $15,000 and transferred the title to a silver or gray Jeep (unknown model) with low mileage valued at more than $15,000. *Clark returned to his supplier within two days of the front and received another two kilograms.* Clark intended to sell the Jeep for approximately $15,000.

R. Doc. 73, at 9-10 (emphases added).

Clark argues that he objected to the reported statements of the confidential witness, and that it was error for the district court to rely on them. Clark's objection to paragraph 30 stated: "Defendant objects that he did not typically receive two kilograms of cocaine at a time. CW1 is not reliable and his hearsay statements do not have sufficient indicia of reliability to support their probable accuracy." The objection then denied that the Jeep involved was worth $15,000 when Clark received it.

Clark's objection to paragraph 30 disputed only the amount of cocaine that he "typically" obtained at one time as set forth in the first sentence of the paragraph. He did not object to the entire paragraph, and he did not object to the factual allegations that he obtained two kilograms of cocaine on two particular occasions. The district court explained that it was adopting the four kilograms of cocaine in paragraph 30 because Clark did not object to the allegations, and Clark did not seek to amend or clarify his objection. The court thus did not err in accepting as true that Clark received the cocaine.

Clark next challenges the district court's imposition of a two-level increase for maintaining a drug premises. The adjustment applies "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." USSG § 2D1.1(b)(12). The district court cited undisputed facts that Clark distributed cocaine that was stored at his residence in controlled transactions in October 2019 and November 2022. We review for clear error the district court's finding that Clark maintained the premises for the purpose of distributing cocaine. *United States v. Miller*, 698 F.3d 699, 705 (8th Cir. 2012).

The adjustment applies to a defendant "who knowingly maintains a premises . . . for the purpose of . . . distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." USSG § 2D1.1, comment. (n.17). Distributing a controlled substance need not be "the sole purpose for which

-4-

the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.* The increase applies when a defendant "uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also [his] family home at the times in question." *Miller*, 698 F.3d at 707.

The district court did not clearly err in finding that Clark maintained his residence for the purpose of distributing cocaine. Clark distributed cocaine in his residence to a confidential informant in 2019. In a subsequent search of the residence, investigators found money that had been used in the controlled transaction stored with an additional $19,500 in cash. The district court reasonably could infer that the cash was the proceeds of similar drug transactions conducted with drugs stored at Clark's residence. Investigators also witnessed Clark distribute cocaine in November 2022 shortly after entering and exiting the same residence, and they seized $3,000 in cash from Clark's residence in February 2023. The amount of cash seized from the residence and the length of time over which the controlled transactions and seizures took place provide a sufficient basis for the district court's finding that Clark used his home for substantial drug-trafficking activity. *See United States v. Hernandez Lopez*, 24 F.4th 1205, 1208 (8th Cir. 2022).

The judgment of the district court is affirmed.

_____